1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11   EVERARDO GARZA JR., on behalf of          Case No. 1:20-cv-01354-JLT-HBK
     himself and all others similarly situated,
12                                             ORDER DENYING PLAINTIFF'S MOTION
                    Plaintiff,                 TO REMAND AND GRANTING
13                                             DEFENDANT'S MOTION TO DISMISS
             v.
14                                             (Docs. 7, 10)
     WINCO HOLDING, INC. dba WINCO
15   FOODS, an Idaho Corporation; and DOES     ORDER GRANTING LEAVE TO AMEND
     1-50, inclusive,
16
                    Defendants.
17

18          Everardo Garza asserts WinCo Holdings violated California employment laws and failed

19   to pay all wages due to employees. Garza seeks to hold WinCo liable for the violations, stating

20   claims on behalf of himself and other similarly situated, non-exempt employees. (*See generally*

21   Doc. 2 at 22-42.)

22          Garza asserts the action was not properly removed from the state court, and WinCo fails

23   to show the Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.SC. § 1332(d),

24   or the Labor Management Relations Act. (Doc. 10.) WinCo opposes the request for remand and

25   seeks dismissal of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for

26   failure to state a claim. (Doc. 7.) For the reasons set forth below, the motion to remand is

27   **DENIED**, and the complaint is **DISMISSED** with leave to amend.

28   ///

                                                   1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Garza filed his original complaint, on behalf of himself and similarly situated employees, in the Superior Court of California, in Stanislaus County, on August 21, 2020. (Doc. 2 at 22-42.) Garza asserts seven causes of action arising under California state law including: (1) failure to pay overtime wages in violation of California Wage Orders and Labor Code §§ 204, 510, 558, 1194, and 1198; (2) failure to pay minimum wages in violation of Labor Code §§ 1194, 1197 and 1182.12; (3) rest period violations under Wage Orders and Labor Code § 226.7 and 516; (4) failure to provide accurate itemized wage statements in violation of Labor Code § 226; (5) waiting time penalties under Labor Code §§ 201, 202, and 203; (6) unfair competition under California Business and Professional Codes §§ 17200, *et seq.*; and (7) civil penalties under the Private Attorneys General Act pursuant to Labor Code § 2698. (*Id.*)

Garza's claims arise from his employment as a non-exempt employee at WinCo, which operates grocery stores and a distribution and transportation network across California. (*Id.* at 25.) Garza alleges WinCo imposed a rounding policy when accounting for employee work hours. (*Id.*) This rounding policy allegedly resulted in both unpaid regular hours worked and overtime hours. (*Id.* at 25-26.) For the overtime hours which WinCo did account for, Garza also alleges WinCo improperly calculated the overtime rate. (*Id.* at 26.) Garza further contends WinCo failed to pay Garza and other non-exempt employees non-discretionary bonus payments related to overtime hours worked. (*Id.*)

With respect to the rest period violations, Garza alleges WinCo failed to provide the required rest breaks for non-exempt employees because they were "often unable to take uninterrupted, duty-free rest periods due to the operating requirements of the job." (*Id.* at 28.) Garza contends "Defendants did not authorize and permit Plaintiffs and members of the Classes to take any rest periods to which they were legally entitled." (*Id.* at 35.)

Garza asserts WinCo's rounding and rest period policies resulted in the providing of inaccurate itemized wage statements and waiting time penalties under the California Labor Code, giving rise to its fourth and fifth cause of action, respectively. (*Id.* at 36-38.) Garza's sixth and seventh causes of action provide an additional basis of recovery for these allegedly unlawful

1    employment practices. (*Id.* at 38-39.)

2         On September 23, 2020, WinCo timely removed the case to federal court. (Doc. 2.)

3    WinCo asserts the Court has subject matter jurisdiction over all claims under the Class Action

4    Fairness Act ("CAFA"). (*Id.* at 2.) WinCo also contends original federal jurisdiction exists for

5    Garza's claim related to overtime wages under the Labor Management Relations Act ("LMRA"),

6    29 U.S.C. § 185, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (*Id.*)

7         On October 7, 2020, WinCo moved to dismiss all claims for failure to state a claim under

8    Federal Rule of Civil Procedure 12(b)(6). (Doc. 7 at 2.) WinCo contends Garza's first cause of

9    action is preempted and subject to dismissal under the LMRA because Garza's employment was

10   governed by a collective bargaining agreement ("CBA"). (*Id.* at 2-7.) For Garza's remaining

11   causes of action, WinCo contends the complaint is not sufficiently plead. (*Id.* at 14-22.) Garza

12   filed his opposition to the motion on October 21, 2020 (Doc. 9), to which WinCo filed its reply on

13   October 28, 2020 (Doc. 12).

14        On October 22, 2020, Garza filed a motion to remand to state court contending that his

15   overtime claim is not preempted by the LMRA, and WinCo has not shown the amount in

16   controversy exceeds the jurisdictional threshold under 28 U.S.C. § 1332(d)(2). (Doc. 10.) WinCo

17   filed its opposition to the motion on November 5, 2020 (Doc. 14), to which Garza filed a reply on

18   November 12, 2020 (Doc. 15).[1]

19        The Court will first address the challenge to its jurisdiction. Finding federal subject matter

20   jurisdiction does exist, the Court subsequently will address the motion to dismiss.

21                           **II.    EVIDENTIARY CHALLENGES**

22   **A.    Elison Declaration**

23        With its notice of removal, WinCo submitted a declaration from its payroll manager,

24   Robert Elison. (Doc 2-1 at 1-4.) WinCo relies on the Elison Declaration to support its calculations

25   for the amount the in controversy and to authenticate the two CBAs submitted by WinCo. (Doc. 2

26   at 8-10, 13.) Mr. Elison explains he has access to the electronic payroll system and electronic

27

28   _____
     [1] As the parties were informed on September 24, 2020, the Eastern District of California has been in a state of
     judicial emergency. (*See* Doc. 4-2.) This action was assigned to the undersigned in January 2022. (Doc. 20.)

databases used to maintain records for WinCo's employees. (Doc. 2-1 at 2.) Mr. Elison searched and filtered the data, for selected employees and timeframes, to determine the average hourly rates, number of workweeks and pay periods, average shift length, and number of shifts. (*Id.*) From the databases, Mr. Elison also determined the number of employees terminated from WinCo during August 21, 2017, to September 14, 2020, in accordance with statutory period of relief for Garza's waiting time penalty claim. (*Id.* at 3.)

Garza objects to WinCo's reliance on the Elison declaration because Mr. Elison "merely relies on his access to Winco's [sic] records and 'using various search and filter functions'" but "fails to explain what electronic payroll information and data was used." (Doc. 10 at 17-18; citing Doc. 2-1 at 2.) Although Mr. Elison did not identify the payroll software by name, it does not appear this information is relevant. Rather, the Court finds the information provided—namely that Mr. Elison had access to the systems and set appropriate data filters—was sufficient. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *2 n.4 (C.D. Cal. May 5, 2016) (finding sufficient evidence from a declaration of an employee who accessed defendant's records and ran queries that defendant "ordinarily rel[ies] upon in the course of business" to identify relevant class members). Moreover, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages." *Muniz v. Pilot Travel Centers, LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4-5 (E.D. Cal. May 1, 2007) (finding a defendant is not required to submit the "underlying documents which support its [amount-in-controversy] calculations"). Thus, Garza's objections are overruled. *See Ibarra*, 775 F.3d at 1197 (indicating a defendant may submit declarations to support its estimates).

**B.     Collective Bargaining Agreements**

With its notice of removal, WinCo also submitted two CBAs, which it contends governed the entire relevant term of employment for which Garza seeks relief. (Doc. 2 at ¶ 44; Doc. 2-1 at 5-45 (Exhibit A to Elison Declaration), 46-82 (Exhibit B to Elison Declaration).) The first CBA, attached as Exhibit A to the notice of removal, pertains to the employment period from August 11, 2014, through August 10, 2019. (*Id.* at 6.) The second CBA, attached as Exhibit B, covers

employment from August 11, 2019, through August 10, 2024. (*Id.* at 47.) Both CBAs contain similar provisions for employees' wage scale (Doc. 2-1 at 36, 44, 73, 81); hours of work, including pay differentials for overtime pay (Doc. 2-1 at 13-16, 53-55); and various sections outlining working conditions for employees, such as nondiscrimination provisions, terms for lunch and rest periods, vacations, and absences (Doc. 2-1 at 12-25, 52-69). WinCo relies on the information contained in these two CBAs in its motion to dismiss and in its opposition to Garza's motion for remand. (*See, e.g.*, Doc. 7-1 at 10, Doc. 14 at 11 n.4.)

WinCo requests the Court take judicial notice of these CBAs in support of its motion to dismiss. (Doc. 7-2.) Garza, in his opposition, did not address WinCo's request for judicial notice of the CBAs. (*See generally*, Docs. 9, 10, 15.) To the extent Garza's argument that "Defendant improperly relies on outside documents, including various Collective Bargaining Agreements" (Doc. 9 at 8) may be construed as an evidentiary objection, this argument fails. Courts regularly take judicial notice of collective bargaining agreements on a motion to dismiss when the documents are "not subject to reasonable dispute." *See, e.g. Jones v. AT & T,* No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008) ("relevant case law supports the proposition that the Court may take judicial notice of a CBA in evaluating a motion to dismiss"); *Garcia v. Wine Grp., LLC,* No. 1:19-cv-01222-DAD-JDP, 2020 WL 6445023, at *2, n.2 (E.D. Cal. Nov. 3, 2020) (citing *Jones* and taking judicial notice of CBAs as "such documents properly are . . . materials not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Garza does not challenge the authenticity of the CBAs or that these agreements governed his employment at WinCo. *See Morris v. Clark Pacific*, No. 2:20-cv-01291 WBS CKD, 2020 WL 6526248, at *3 (E.D. Cal. Nov. 5, 2020) (taking judicial notice of a CBA where the plaintiff did "not dispute the authenticity of the CBA, that he was a member of the Union, or that he was a covered employee according to the terms of the CBA when the allegations in his complaint took place"). Because the Court finds the two CBAs will aid in assessing the merits of WinCo's motion to dismiss and opposition to the motion to remand, Garza's objections are overruled and WinCo's request for judicial notice is granted.

### III.   MOTION TO REMAND

A suit brought in state court may be removed to federal court if the court would have original jurisdiction over the suit. 28 U.S.C. § 1441(a); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). Courts have original jurisdiction—or federal question jurisdiction—of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

In its notice of removal, WinCo asserts the Court has original jurisdiction under two federal statutes. First, it argues jurisdictions exists under CAFA, because it is a class action with minimal diversity, a putative class membership of more than 100 members, and an amount in controversy of greater than $5,000,000. (Doc. 2 at 3.) Garza only disputes the amount in controversy calculation. (Doc. 10 at 7.) Second, WinCo claims jurisdiction under the LMRA because the federal statute preempts Garza's state law claim. (Doc. 2 at 12.)

### A.   Federal Jurisdiction under CAFA

Under CAFA, federal courts have original jurisdiction "over certain class actions, defined in 28 U.S.C. § 1332(d)(1), the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original), quoting *Dart Cherokee*, 574 U.S. at 89.

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir.

2011) (citation omitted). A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal . . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "'[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' '[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 927 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87-89; *Ibarra*, 775 F. 3d at 1197); *see also* 28 U.S.C. § 1446(c)(2) (with certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). When a removing defendant shows recovery could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the removing party bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F. 3d at 1197. This burden may be satisfied by submitting "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" or by relying upon reasonable assumptions. *Id.*; *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint."). Removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

The amount in controversy is not the amount of damages that the plaintiff will likely

7

recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of defendant's liability," *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." *Id.* Thus, the amount in controversy merely "reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927.

**B.    Discussion**

The parties dispute whether the amount in controversy exceeds $5,000,000 to invoke this Court's jurisdiction under CAFA. WinCo relies on an aggregated amount of potential damages from Garza's first, third, fourth, and fifth causes of action and on the claim for attorneys' fees. (Doc. 2 at 11.) Garza disputes the sub-total alleged by WinCo for each claim. (Doc. 10 at 7.)

1.    <u>Overtime Claim</u>

Garza's first cause of action alleges violations for failure to pay non-exempt employees for all overtime hours worked and for failure to calculate the appropriate overtime compensation rate. (Doc. 2 at 34.) California Labor Code section 510 requires employers to pay employees that work in excess of eight hours in a day or forty hours in a week at a rate of no less than one and a half times the regular rate of pay for an employee. *See* Cal. Lab. Code § 510(a). It also ensures a compensation rate of no less than twice the regular rate of pay when an employee works more than twelve hours in a day or more than eight hours on the seventh consecutive day of work. *Id.*

Garza alleges WinCo's "uniform and unlawful practice" of rounding hours resulted in unpaid overtime hours. (Doc. 2 at 34.) To calculate the amount in controversy from the alleged wrongful practice, WinCo assumed at least one unpaid overtime hour per week, over the relevant period, for each putative class member. (*Id.* at 8.) WinCo determined its non-exempt distribution center employees had an average hourly pay of $23.81 and worked 74,126 workweeks in the statutory period of recovery. (*Id*, citing Elison Decl. ¶¶ 9-10 [Doc. 2-1 at 3].) Thus, WinCo estimated the amount in controversy for Garza's overtime claims as $2,647,410.09 [(74,126 workweeks) x ($23.81/hour x 1.5 rate of pay) x (1 unpaid overtime hour per week)]. (*Id.*)

Garza contends WinCo improperly assumed a rate of one violation per week without identifying the subclass of employees that worked overtime hours. (Doc. 10 at 12-13.) Garza did

1   not, in his complaint or moving papers submitted with his motion to remand, identify an

2   alternative violation rate for the Court to consider. On the other hand, WinCo argues Garza's

3   allegations that "non-exempt employees were *regularly* required to work *daily* overtime *hours*"

4   support the assumption that one-hour per week of unpaid overtime per employee is reasonable.

5   (Doc. 14 at 15 (emphasis in original, internal quotations omitted).)

6         Notably, this Court previously found that when the plaintiff alleged a general pattern or

7   practice of unpaid overtime, the presumption of a one-hour per week of missed overtime pay, the

8   equivalent of a 20% violation rate, was reasonable. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No.

9   2:21-cv-00863-TLN-JDP, 2022 WL 597158, *4 (E.D. Cal. Feb. 28, 2022); *see also Wicker v.*

10  *ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, *2-3 (E.D. Cal. Mar. 30,

11  2021) (finding one overtime violation per week reasonable as a 20% violation rate based on

12  "Plaintiff's complaint alleging 'a pattern and practice' of 'Defendants fail[ing] to pay overtime

13  wages to Plaintiff and other class member for all hours worked'") (alteration in original). Here,

14  Garza alleges WinCo employed a policy of rounding employees' hours that resulted in a

15  miscalculation of total overtime hours worked. (Doc. 2 at 25.) This constitutes a general pattern or

16  practice of labor violations. *See Vallejo v. Sterigenics U.S., LLC*, No. 3:20-cv-01788-AJB-AHG

17  2021 WL 2685348, *4 (S.D. Cal. June 29, 2021) (finding one hour per week unpaid overtime is a

18  reasonable assumption where plaintiff brought a claim for "unpaid overtime based on unlawful

19  rounding"); *see also Wicker*, 2021 WL 1187271, at *2-3 (same).

20        Further, a 20% violation rate squarely falls within the range of accepted violation rates

21  when the plaintiff alleges a pattern or practice of violations but does not otherwise specify the

22  frequency with which they occurred. Following *Ibarra*, courts found "violation rates of 25% to

23  60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and

24  practice' allegation." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020)

25  (collecting cases); *see also Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-

26  DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (citations omitted) (finding defendants'

27  calculation based on a 20% violation rate was "a conservative estimate allowing for the

28  possibility that not every putative class member worked overtime"). Thus, WinCo's assumption

of one hour per week of missed overtime hours worked is reasonable based on Garza's allegations.

Garza also argues WinCo improperly calculated overtime damages by applying the one and a half base pay differential in its calculation. Garza argues the overtime claim consists of a differential of "cents, not dollars" because he alleged WinCo miscalculated the overtime rate as $46.577 instead of $46.815. (Doc. 10 at 12, citing Complaint ¶ 15 [Doc. 2 at 27].) Notably, however, the complaint contains allegations for both wholly missed and unpaid hours of overtime—those caused by WinCo improperly rounding and not capturing all actual hours worked—and a slight miscalculation of the overtime rate paid for the overtime hours that WinCo attributed to employees. (Doc. 2 at 25, 27.) While WinCo did not address the overtime rate differential in its calculation, Garza's claim for wholly unpaid overtime hours provides a sufficient basis for WinCo's one-hour per week assumption for the reasons stated above.

### 2.   Rest Period Violations

Garza alleges in his third cause of action that WinCo "did not authorize or permit . . . any rest periods" to which Garza and class members were entitled. (Doc. 2 at 35.) Under California Labor Code §§ 226.7 and 516, employers must provide non-exempt employees with at least one ten-minute rest period for every four hours worked. Failure to provide the rest periods results in a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

Garza alleges he and "other non-exempt employees were often unable to take uninterrupted, duty-free rest periods due to the operating requirements of the job." (Doc. 2 at 28.) To estimate the amount in controversy, WinCo assumed a violation rate of two break periods per week for each class member. (Doc. 2 at 8-9.) Relying on the information in the WinCo databases accessed by Mr. Elison, WinCo estimated the amount in controversy for the rest period violations is $3,529,880.12, with an average hourly rate of $23.81 [$23.81/hour x 2 violations x 74,126 workweeks]. (*Id.*)

Garza contends WinCo's violation rate is unfounded because it failed to consider which class members would be entitled to rest periods. (Doc. 10 at 14.) Garza relies on *Roth v. Comerica*

1    *Bank*, where Roth alleged that rest period violations occurred often. *Id.*, 799 F. Supp. 2d 1107,

2    1111 (C.D. Cal. 2010). Specifically, Roth asserted "[d]uring the relevant time period, Defendants

3    willfully required Plaintiff and class members to work during rest periods." *Id.* (modification in

4    original). He alleged "class members often did not take timely, uninterrupted meal periods of not

5    less than thirty (30) minutes." *Id.* Roth did "not specifically allege how frequently he and other

6    class members were denied the opportunity to take . . . rest periods." *Id.* To calculate the amount

7    in controversy related to the alleged rest period violations, the defendant assumed each class

8    member suffered "one to three" rest period violations per week. *Id.* at 1120. The court found this

9    assumption was "entirely unsupported," and rejected the calculation.[2] *Id.*

10        In contrast to the allegations made in *Roth*, Garza not only contends WinCo "often"

11   denied rest periods, but also alleges WinCo failed to authorize "Plaintiffs and members of the

12   Classes to take *any* rest periods to which they were legally entitled." (Doc. 2 at 35, ¶ 49, emphasis

13   added.) When a plaintiff alleges only that a violation occurs "often," it is unreasonable to assume

14   a 100% violation rate to calculate the amount in controversy. *Ibarra*, 775 F.3d at 1198-99. On the

15   other hand, the allegation of consistent, universal denial of rest periods—such as Garza makes—

16   supports a violation rate up to 100%. *Byrd*, 2016 WL 2593912, at *3 ("courts have allowed 100%

17   violation rate assumptions in similar situations where plaintiffs alleged a 'laundry list' of potential

18   violations" and claimed the defendant denied rest periods "at all material times") (collecting

19   cases); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal.

20   2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy

21   when the complaint does not allege a more precise calculation.").

22        Moreover, as discussed above, courts determined violation rates of 25% to 60% can be

23   reasonably assumed as a matter of law based on a plaintiff's allegation of a company "pattern or

24   practice" or "policy and practice." *Avila*, 432 F. Supp. 3d at 1189. The violation rate used by

25   WinCo of two break periods per week corresponds to a 40% violation rate. *See Soto v. Teck*

26

27   ─────────────────────
     [2] Importantly, in *Roth*, the court applied a "strong presumption against removal." *Id.* at 1115. The Supreme Court
     subsequently clarified this presumption does not apply to jurisdictional challenges under the CAFA. *Dart Cherokee*,
28   574 U.S. at 89. To the contrary, courts now accord a "strong preference" to properly removed interstate class actions.
     *Allen*, 784 F.3d at 633. For this reason, Garza's reliance on *Roth* is misplaced.

*Packaging, Inc.*, Case No. ED CV 19-1766-MWF (SHKx), 2019 WL 6492245, at *4 (C.D. Cal. Dec. 3, 2019) (equating five missed meal and rest periods per day to a 100% violation rate based on a five-day work week and finding the assumption supported by allegations defendant "failed to provide Plaintiff and other class members *all* required rest and meal periods during the relevant time period") (emphasis in original). Given Plaintiff's allegation that WinCo denied class members "any rest periods," WinCo's assumption of a 40% violation rate has a reasonable foundation both in the complaint and the law. *See Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012) (holding allegations that the defendant "regularly and consistently failed to provide uninterrupted meal and rest periods" supported the assumption of two missed breaks per week); *see also Avila*, 432 F. Supp. 3d at 1189. Accordingly, WinCo properly used the violation rate of two missed breaks per work week to calculate the amount in controversy.

### 3.   Wage Statements

Garza contends with his fourth cause of action that WinCo failed to provide accurate itemized wage statements. (Doc. 2 at 36.) California Labor Code § 226(a) requires employers to furnish to employees, at the time of each payment of wages, a statement which includes: gross wages earned, total hours worked, deductions, net wages, dates for which the statement applies, and all applicable hourly rates during the payment period. Failure to provide such statements may result in an initial fifty-dollar penalty per employee for the first violation and a $100 penalty, per employee, for each subsequent violation. Cal. Labor Code § 226(e)(1).

Garza alleges the wage statements received indicated inaccurate compensation of minimum wages and overtime wages. (Doc. 2 at 36.) Garza also asserts the wage statements failed to account for the penalties associate with missed rest periods. (*Id.*) WinCo considered the statutory penalty amounts for these violations, the one-year statute of limitations, the number of employees in the putative class, and the bi-weekly pay structure. (*Id.* at 9.) Specifically, WinCo determined it employed approximately 424 class members during the applicable period, and "[t]he total number of pay periods in which these employees would have received a pay statement during this time period is 11,087." (*Id.*, citing Elison Decl. ¶ 8 [Doc. 2-1 at 3].) Using a 100% violation rate, WinCo calculated the amount in controversy for wage statements violations was

1  $1,087,500.00 [(424 employees x $50 per employee for the initial violation) + ((11,087 total pay

2  periods - 424 initial pay periods) x $100)]. (*Id.*)

3        Garza argues WinCo's calculation lacks sufficient evidentiary support because WinCo

4  cannot assume a 100% violation rate based on allegations that an employer had a pattern or

5  practice of labor violations. (Doc. 10 at 15-16.) Again, however, Garza asserts WinCo uniformly

6  applies a rounding policy to determine all hours worked for all employees. Garza alleges the

7  rounding policy results in unpaid hours worked—both under his overtime and his minimum wage

8  claims. Given that WinCo issues wage statement to employees on a bi-weekly basis, it is

9  reasonable to assume a rounding error occurred at least once every two weeks, particularly

10  considering Garza's allegations apply to every shift worked, by every employee. *Altamirano*,

11  2013 WL 2950600, at *7 ("Given Plaintiff's allegations that the time shaving policy applied to all

12  putative class members, and given that penalties would attach even if there was only one minor

13  violation during a given pay period (e.g. an employee underpaid by 1–2 minutes), assuming a

14  100% violation rate is not unreasonable").

15        Even if a rounding error did not occur at least once each pay period for each employee,

16  WinCo also properly relied on Garza's allegations concerning missed rest periods to calculate its

17  estimate for the wage statement violations. As explained above, Garza alleges WinCo did not

18  permit employees to take *any* breaks to which they were entitled. (Doc. 2 at 35.) Because Garza

19  contends these violations resulted in inaccurate wage statements, the allegations support a 100%

20  violation rate. *Byrd*, 2016 WL 2593912, at *7 (finding 100% violation rate for wage statements

21  reasonable where the plaintiff alleged "universal violations" of inaccurate wage statements and a

22  "uniform policy/practice of wage abuse," including the denial of rest periods); *Muniz*, 2007 WL

23  1302504, at *4 (finding a 100% violation rate reasonable where the complaint contained broadly

24  applicable allegations, did not define a sub-class to which certain claims were applicable, and the

25  plaintiff did not assert a violation rate of less than 100%).

26      4.   <u>Waiting Time Penalties</u>

27        Under his sixth cause of action, Garza asserts WinCo failed to comply with California

28  Labor Code §§ 201 and 202 (Doc. 2 at 37), which require employers to pay all compensation

1    owed to employees at or around termination from employment. Section 203 provides a penalty for

2    employers who willfully fail to pay any wages of an employee who is discharged or quits, which

3    includes wages that accrue from the date due up to thirty days thereafter. Cal. Labor Code §§ 201,

4    202, 203. The statute imposes a three-year statute of limitations, determined from the date the

5    complaint was filed. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

6        Garza asserts WinCo failed to pay employees, after termination of employment, for all

7    hours worked at the appropriate wage rate or overtime rate due to the rounding policy and failed

8    to pay employees for the missed rest periods. (Doc. 2 at 37.) Mr. Elison identified 97 "non-

9    exempt distribution center employees in California employed by WinCo whose employment

10    terminated during the time period of August 21, 2017 to September 14, 2020." (Doc. 2-1 at 3,

11    Elison Decl. ¶ 7.) Mr. Elison calculated the average hourly rate was $19.30/hour and noted "most

12    of these employees … [worked] shifts of approximately 8 hours." (*Id.*) WinCo indicated it used a

13    5-hour shift to make "a conservative estimate of the amount in controversy," because not all

14    employees worked 8-hour shifts. (Doc. 2 at 10.) WinCo assumed each of the 97 employees did

15    not timely receive all wages due after termination as required by the California Labor Code. (*Id.*)

16    Thus, WinCo estimated the amount in controversy for waiting time penalties was $280,815.00

17    [(97 former employees) x ($19.30/hour) x (5 hours per day) x (30 days)].[3] (*Id.*)

18        WinCo's assumed 100% violation rate for these ninety-seven employees is reasonable. As

19    previously stated with respect to the accurate wage statement claim, Garza alleges uniform and

20    unlawful wage practices—including the rounding policy and denial of rest periods—applied to all

21    employees, which resulted in failure to adequately and accurate employees terminated from

22    WinCo. (Doc. 2 at 36-37.) Such uniform policies provide a reasonable basis for WinCo to assume

23    a 100% violation rate for Garza's waiting time claim. *See Bryd*, 2016 WL 2593912 (finding use

24    of a 100% violation rate reasonable where the plaintiff alleged the defendant "engaged in a

25    uniform policy/practice of wage abuse," and failed to pay employees "for all regular and/or

26    overtime wages earned, missed meal periods and rest breaks in violation of California law").

27

28    [3] Opposing the motion to remand, WinCo noted if it instead applied the 8-hour workday that a majority of the
     identified employees worked, the amount in controversy would total $449,304.00. (Doc. 14 at 19.)

5.      Attorneys' Fees

WinCo suggested the Court consider 25% of the calculated amount in controversy as the estimated attorney fees, which would increase the amount in controversy. (Doc. 2 at 10-11.) Garza contends attorneys' fees should not be included in the amount in controversy because only his claims for overtime expressly authorize an award of attorneys' fees. (Doc. 10 at 18-19.)

It is well-established that defendants may include a reasonable estimate of attorneys' fees for purposes of estimating the amount in controversy when—as here—a plaintiff's claims arise under a fee-shifting statute. *Arias*, 936 F.3d at 927, citing *Frisch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Regardless, because the Court finds WinCo established the amount in controversy exceeds $5,000,000 without including attorneys' fees, the Court need not address the parties' arguments related to the estimated fees.

**C.**     **Conclusion as to Amount in Controversy**

For the reasons stated above, Court finds WinCo's methods for calculating the following subtotals for each claim are reasonable:

| Claim | Amount in Controversy |
|---|---|
| 1. Overtime Claim | $2,647,410.09 |
| 2. Rest Period Claim | $3,529,880.12 |
| 3. Labor Code § 226 Claim | $1,087.500.00 |
| 4. Labor Code § 203 Claim | $280,815.00 |
| **Sub-Total** | $7,545,605.21 |

Accordingly, the Court finds WinCo carried the burden to show amount in controversy more likely than not exceeds $5,000,000, and this Court has jurisdiction under CAFA.[4]

**IV.**     **MOTION TO DISMISS**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule

---

[4] Because the Court finds it has jurisdiction under CAFA, it does not address WinCo's alternative argument that it has jurisdiction under the Labor Management Relations Act.

12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### A.   Preemption by LMRA § 301

WinCo argues Garza's overtime claim is preempted by Section 301 of the LMRA and therefore subject to dismissal. (Doc. 7-1 at 7.) Garza maintains the LMRA does not preempt his claim because the California Labor Code confers his overtime rights. (Doc. 9 at 10-11.)

#### 1.   Legal Standard

Congress enacted the LMRA to "promote the full flow of commerce" by providing "orderly and peaceful procedures for preventing [] interference by [employees or employers] with the legitimate rights of the other." *Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 23 F.4th 836, 840-41 (9th Cir. 2022) (quoting 29 U.S.C. §141(b)). "To that end, LMRA § 301(a) provides that '[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court.'" *Id.* (quoting 29 U.S.C. § 185(a)).

1  Preemption under Section 301 of the LMRA serves the purpose of supporting "an effort to erect a

2  system of industrial self-government" by establishing a uniform enforcement of collective

3  bargaining agreements. *Allis-Chalmers Corps. v. Lueck*, 471 U.S. 202, 210-11 (1985) (quoting

4  *Bowen v. U.S. Postal Service*, 459 U.S. 2121, 224-25 (1983).

5         Preemption by the LMRA arises in cases where a plaintiff files a complaint asserting state

6  law claims but his employment was governed by a CBA. The preemptive effect of Section 301

7  applies to all "state law claims grounded in the provisions of a CBA or requiring interpretation of

8  a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). "If a

9  state law claim is either grounded in the provisions of the labor contract or requires interpretation

10 of it, the dispute must be resolved through grievance and arbitration," as defined in the CBA

11 governing the employment. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 919 (2018) (quoting

12 *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

13        The Ninth Circuit identified a two-part test to determine whether a plaintiff's state law

14 claims are preempted by the LMRA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir.

15 2019). The defendant need only satisfy one of the elements for preemption under LMRA to apply.

16 *Burnside*, 491 F.3d at 1059. First, the state law claims are preempted by the LMRA if the asserted

17 cause of action involves a "right [that] exists solely as a result of the CBA." *Id.* at 1059 (citing

18 *Allis-Chalmers*, 471 U.S. at 212 (holding Section 301 cannot "preempt state rules that proscribe

19 conduct, or establish rights and obligations, independent of a labor contract")). In such cases, "the

20 uniform body of federal labor law [] control[s] the resolution of the parties' dispute." *Alaska*

21 *Airlines*, 898 F.3d at 921. The essential inquiry is whether the claim seeks "purely to vindicate a

22 right or duty create by the CBA itself." *Curtis*, 913 F.3d at 1152 (citation omitted).

23        Second, LMRA preemption applies if a plaintiff's state law claim is "substantially

24 dependent on analysis of a collective bargaining agreement." *Burnside*, 491 F.3d at 1060. Claims

25 are substantially dependent on the CBA when litigating the state law claim requires interpretation

26 of the CBA. *Alaska Airlines*, 898 F.3d at 918. Construed narrowly, "requiring interpretation"

27 includes only claims "where there is an active dispute over the 'meaning of the contract terms.'"

28 *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 114 (1994). "Accordingly, a state law claim may

1  avoid preemption if it does not raise questions about the scope, meaning, or application of the

2  CBA." *Curits*, 913 F.3d at 1153.

3        2.  <u>Discussion</u>

4        a.  *Whether Garza's Claim Arises from a Right Existing under the CBA*

5        WinCo argues the overtime claim is preempted by Section 301 of the LMRA because any

6  rights to overtime wages arise "exclusively under the CBA." (Doc. 14 at 12.) WinCo submitted

7  two CBAs, which collectively cover the entire relevant time period for Garza's claims. (Doc. 2 at

8  ¶ 44; Doc. 2-1 at 5-45 (Exhibit A to Elison Decl.), at 46-82 (Exhibit B to Elison Decl.).) WinCo

9  points to Article 9 of both CBAs, which provide the overtime policy for WinCo employees. (Doc.

10  2-1 at 14-15, 54.) The CBAs require WinCo to pay employees who work more than forty hours a

11  week or more than eight hours per shift at a rate of one and a half their normal rate. (*Id.*) The

12  CBAs also require compensation of double employees' normal rate when working more than

13  twelve hours and for the seventh consecutive day of work, if it falls on weekend. (*Id.*)

14        In his complaint, Garza asserts that the claim for unpaid overtime arises not under the

15  CBAs but rather under California Labor Code § 510. (Doc. 2 at 33-34.) Section 510 provides a

16  default for overtime compensation and ensures that non-exempt employees who work more than

17  eight hours in a day or forty hours in a week receive a rate of no less than one and a half times the

18  regular rate of pay. *See* Cal. Labor Code § 510(a). It also ensures a compensation rate of no less

19  than twice the regular rate of pay when an employee works more than twelve hours in a day or

20  more than eight hours on the seventh consecutive day of work. *Id.*

21        Section 510(a), however, explains these provisions do *not* apply to employees working

22  pursuant to an "alternative workweek schedule adopted pursuant to a collective bargaining

23  agreement pursuant to Section 514." Cal. Labor Code § 510(a)(2). The Ninth Circuit recognizes

24  the exception under Section 514, for employees working pursuant to a CBA, replaces the default

25  overtime provision under Section 510(a), and translates to preemption of a plaintiff's state law

26  claims by the LMRA. *Curtis*, 913 F.3d at 1154-55 (holding overtime claims were preempted by

27  CBA where the state statute allowed "unionized employees to contract around section 510(a)'s

28  requirements" for both the rate of overtime pay and when overtime pay will begin).

For the exemption to apply, and therefore to trigger preemption under the LMRA, Section 514 defines three criteria which the CBA must meet. *Curtis*, 913 F.3d at 1154. A CBA must: (1) "expressly provide[] for the wages, hours of work, and working conditions of the employees"; (2) "provide[] premium wage rates for all overtime hours worked"; and (3) provide "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514. Because Section 514 expressly exempts state overtime claims if a CBA meets these three requirements, whether Garza's overtime claims are preempted depends on whether the CBAs meet these three requirements. *See Rooney v. Save Mark Supermarkets*, No. 220CV00671JAMFEB, 2020 WL 3819481, at *2 (E.D. Cal. July 8, 2020) ("if the CBA at issue meets the requirements of Section 514, Plaintiff's claim will be preempted.").

WinCo contends that all three requirements of Section 514 are met. (Doc. 7 at 10-11; Doc. 14 at 12, n. 4.) First, the various provisions of the CBAs define wages (Driver Wage Scale (Doc. 2-1 at 36, 73); Warehouse Wage Scale (Doc. 2-1 at 44, 81)); hours of work (Article 9, Scheduling and Hours of Work (Doc. 2-1 at 13-16, 53-55)); and working conditions of employees (including nondiscrimination, discharge, seniority, holidays, lunch and rest periods, vacation, leave of absence, health insurance, sick leave, strikes and lockouts (Doc. 2-1 at 12-25, 52-69)). Second, neither party contests that the CBA terms set overtime pay at a premium. (*Id.* at 14-15, 54; Doc. 7-1 at 10; Doc. 14 at 12, n. 4; Doc. 9 at 10-11; Doc. 10 at 21.) Third, the normal pay scales for both drivers and warehouse employees show that WinCo paid employees, at all relevant times, at least 30% more than the California minimum wage:

| Year | CA Minimum wage | Wage + 30% premium to meet LC 514 | Lowest Driver Hourly Wage | Lowest Warehouse Hourly Wage |
|------|------|------|------|------|
| 2016 | 10.00 | 13.00 | 1/1/16: $16.15; 8/1/16 forward: 16.44 | 1/1/16: $16.15; 8/1/16 forward: 16.44 |
| 2017 | 10.50 | 13.65 | 1/1/17: 16.44; 8/1/17 forward: 16.72 | 1/1/17: 16.44; 8/1/17 forward: 16.72 |
| 2018 | 11.00 | 14.30 | 1/1/18: 16.72; 8/1/18 forward: 17.12 | 1/1/18: 16.72; 8/1/18 forward: 17.12 |
| 2019 | 12.00 | 15.60 | 1/1/19: 17.12; 7/28/19 forward: 17.55 | 1/1/19: 17.12; 7/28/19 forward: 17.55 |
| 2020 | 13.00 | 16.90 | 1/1/20: 17.55; 8/2/20 forward: 17.90 | 1/1/20: 17.55; 8/2/20 forward: 17.90 |

(Doc. 7-1 at 10.)

Garza does not directly contest WinCo's assertions regarding these three requirements. Rather, he argues that because the dispute does not concern "how the overtime pay is calculated pursuant to the CBA but whether defendant paid plaintiff overtime compensation for all hours worked in accordance with California law," the claim does not arise under the CBA. (Doc. 10 at 20.) The Ninth Circuit expressly rejected this argument. *See Curtis*, 913 F.3d at 1154-55. Preemption under Section 301 of the LMRA and the exemption under Section 514 of the California Labor Code applies to both *when* overtime pay accrues and to the *rate* of overtime compensation. *Id.*

In addition, Garza relies on *Gregory v. SCIE, LLC* to oppose WinCo's contentions and argues even if the CBA meets the requirements of Section 514, its claims are preempted. (Doc. 9 at 11, citing *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003).) Citing *Gregory*, Garza contends that regardless of whether the CBA governs the overtime provisions, the terms do not need interpretation, and thus, his claims are based entirely on state law. (*Id.*; *see also* Doc. 10 at 21.) However, the Ninth Circuit found "*Gregory* was overruled by intervening California case law," and confirmed Section 510 of the California code merely provides a default definition for overtime rates and hours. *Curtis*, 913 F.3d at 1154-55 (citing *Vranish v. Exxon Mobil Corp.*, 166 Cal. Rptr. 3d 845, 849-50 (Cal. Ct. App. 2019). When the exemption under Section 514 applies, courts must "look to the CBA to determine the definition of 'overtime,'" including the "*rate* of overtime pay [and] *when* overtime pay will begin." *Id.* at 1154 (emphasis in original). Garza's claims concern both the rate of overtime pay—"Defendants improperly calculated and paid Garza an overtime rate of $46.577, instead of $46.815" (Doc. 9 at 12)—and the total hours for which employees should have been paid overtime—"Plaintiff and other non-exempt employees are not compensated for all the hours that they work and all of the overtime hours they work" (Doc. 2 at 25). Thus, both of Garza's challenges to overtime compensation fall under terms exclusively governed by the CBA and are preempted under the first prong of the *Burnside* test.

b.      *Whether Litigation of the Claim Requires Interpretation of the CBA*

The parties also dispute whether the asserted overtime claims require interpretation of CBA terms. Having found the first prong of the *Burnside* test applies and the LMRA preempts the

1  overtime claims, the Court need not address this issue. *Burnside*, 491 F.3d at 1059 ("If the right

2  exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there.").

3                c.     *Whether Preemption Requires Dismissal*

4          Having found Garza's overtime claims preempted under Section 301 of the LMRA, the

5  question becomes whether preemption requires dismissal. WinCo argues, in the alternative, the

6  claims should be dismissed with prejudice because: (1) the exception under California Labor

7  Code § 514 bars the overtime claims under Section 510 or (2) preemption under Section 301 of

8  the LMRA requires exhaustion of the CBAs' grievance and arbitration procedures, which Garza

9  failed to do. (Doc. 7-1 at 9-14.) Garza does not address these arguments, but only maintains the

10  claims are not preempted by the LMRA. (Doc. 9 at 10-11.)

11          As to WinCo's first argument, its cited authority is unpersuasive. WinCo cites primarily to

12  cases addressing the issue on a motion for summary judgment or judgment on the pleadings. *See*

13  *Mireles v. Paragon Syst. Inc.*, No. 13cv122 L (BGS), 2014 WL 4385453, at *5-6 (S.D. Cal. Sept.

14  4, 2014); *Vranish*, 166 Cal. Rptr. 3d at 849-50; *Pyara v. Sysco Corp.*, No. 2:15-cv-01208-JAM-

15  KJN, 2016 WL 3916339, at *3 (N.D. Cal. June 20, 2016); *Angeles v. US Airways, Inc.*, No. C 12-

16  05860 CRB, 2017 WL 565006, at *4 (N.D. Cal. Feb. 13, 2017). The burden of proof differs here

17  on a motion to dismiss. The only case cited by WinCo where Section 514 barred claims on a

18  motion to dismiss provides little reasoning for its conclusion and relies solely on *Mireles*, which

19  was decided on a motion for summary judgment. *See Marquez*, 2018 WL 3218102, at *3.

20          The Court finds WinCo's second argument more persuasive. The Supreme Court held that

21  when LMRA preemption applies, courts should treat the state law claim as a Section 301 claim or

22  dismiss as "preempted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220-21. The

23  Ninth Circuit clarified "the conclusion that § 301 precludes adjudication of a state law claim in

24  whole or part does not automatically require dismissal of a union-represented employee's

25  challenge of an employer's actions." *Kobold*, 832 F.3d at 1036-37. Rather, a plaintiff may

26  "maintain her claim if she can demonstrate that her remedies under the [] CBA were exhausted or

27  can yet be exhausted." *Id.*

28          Garza did not plead compliance with the grievance and arbitration procedures required by

1    the CBA, and it is not addressed in his briefing. Given the preference to freely allow plaintiffs

2    leave to amend complaints unless amendment would be futile, Garza may amend his complaint

3    with such facts that would show compliance with the procedures. *See Buck v. Cemex Corp.*, No.

4    1:13-cv-00701-LJO-MSJ, 2014 WL 5430422 at *4 (E.D. Cal. Oct. 24, 2014).

5    **B.      Sufficiency of Pleadings for Remaining Claims under Rule 8(a)**

6          Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the

7    pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and

8    the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S.

9    41, 47 (1957)). A complaint facing a Rule 12(b)(6) challenge under Rule 8(a)(2) "does not need

10   detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his

11   'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

12   element of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

13   In essence, a complaint "must contain either direct or inferential allegations respecting all the

14   material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

15         In considering a motion to dismiss, courts accept the allegations of the complaint as true

16   and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063,

17   1067 (9th Cir.2009). This presumption does not apply to legal conclusions "cast in the form of

18   factual allegations," *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), or

19   "unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*,

20   266 F.3d 979, 988 (9th Cir.2001). "In sum, for a complaint to survive a motion to dismiss, the

21   non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

22   suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

23   (9th Cir. 2009).

24         1.      Second Cause of Action for Minimum Wage Violations

25         WinCo argues the second cause of action fails because the alleged violations of minimum

26   wage standards rest on a "facially neutral rounding policy" without describing how the policy is

27   uneven on its face or in its application. (Doc. 7-1 at 15.) WinCo cites several cases in the Ninth

28   Circuit and California state courts upholding neutral rounding policies if the rounding policy "on

1   average, favors neither overpayment nor underpayment." *Corbin v. Time Warner Entertainment*,

2   821 F.3d 1069, 1076 (9th Cir. 2016) (internal quotations omitted).

3          Garza contends these cases, all decided on a motion for summary judgment, have no

4   bearing whether the complaint satisfies Rule 8. (Doc. 9 at 13.) While true, even at the motion to

5   dismiss stage, a plaintiff still must plead more than "conclusory allegations that merely recite the

6   statutory language." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014); *see

7   also Boon v. Canon Business Solutions, Inc.*, 592 Fed. Appx. 631, 632 (9th Cir. 2015) (applying

8   the *Landers* pleading standard to claims under the California Labor Code). Under *Landers*, Garza

9   "must, at a minimum, be able to allege facts demonstrating that there was at least one workweek

10  or one specific instance in which the defendant violated the plaintiff's rights." *Johnson v. Winco

11  Foods, LLC*, No. ED CV 17-2288-DOC (SHKx), 2018 WL 6017012, at *5 (C.D. Cal. Apr. 2,

12  2018) (citing *Landers*, 771 F.3d at 646).

13         Garza's only allegations that describe how the rounding policy may have resulted in

14  minimum wage violations concern WinCo's disciplinary policy, which penalized employees who

15  arrived late. (Doc. 2 at 26.) The imposition of late penalties on employees does not explain how

16  the rounding policy resulted in unpaid overtime. To the contrary, such policies simply incentivize

17  employees to arrive, and clock in early, and does not show the non-neutrality of the rounding

18  policy. *See Mendez v. H.J. Heinz Co.*, No. CV125652GHKDTBX, 2012 WL 12888526, at * 9

19  (C.D. Cal. Nov. 13, 2012). As the Central District explained:

20             For instance, suppose the rounding policy works in 15-minute increments,
               whereby 7 minutes or below are rounded down and 8 minutes and above are
21             rounded up. Under such a policy, even if the employee is incentivized to arrive at
               work early by the disciplinary policy, rounding could still lead to a neutral
22             outcome: while the employee's hours are rounded down on days he arrives 5
               minutes early, depriving him of wages earned for those 5 minutes, he is
23             compensated for the 5 minutes he has not worked on days he arrives 10 minutes
               early, because his hours are rounded up under the rounding policy. Thus, to
24             survive a motion to dismiss, Plaintiff must not only allege what
               the rounding policy is, but also additional facts that would plausibly suggest that
25             the policy results in a systematic underpayment of wages.
26

27  *Mendez*, 2012 WL 12888526, at * 9. Like in *Mendez*, Garza did not allege any facts to show how

28  WinCo's late policy resulted in the systematic underpayment of minimum wages for hours

1 actually worked by employees. *See Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-

2 8106 PSG (FFMx), 2019 WL 1751830, at \*2 (C.D. Cal. Feb. 5, 2019) (finding "barebones

3 allegations of 'uneven' or 'improper' rounding [were] plainly insufficient" where plaintiff did not

4 "identify any workweek in which he was not properly paid").

5       In fact, WinCo's rounding policy was recently challenged by another plaintiff who alleged

6 WinCo "used the time clocks . . . to 'improperly round' time in a manner that impermissibly

7 deprived employees of their entitlement to properly calculated wages," but offered no explanation

8 as to how the neutral rounding policy favored WinCo's interest. *Castanon v. Winco Holdings,*

9 *Inc.*, No. 2:20-cv-01656-MCE-EFB, 2021 WL 4480846, at \*3 (E.D. Cal. Sep. 30, 2021). The

10 Court found the complaint deficient of the minimum pleading standard, which requires "'detail

11 regarding a given workweek,' including the length of the average week, the amount of overtime

12 wages believed to be owed, and other facts 'that will permit the court to find plausibility.'" *Id.*

13 (quoting *Landers*, 771 F.3d at 645-46). Garza's minimum wage claim fails for the same reasons.

14       2.    <u>Third Cause of Action for Rest Period Violations</u>

15       Garza asserts WinCo did not provide non-exempt employees with the required rest

16 periods "due to Defendants' invalid rest period policies and practices." (Doc. 9 at 14.) Garza

17 further contends the "operating requirements of the job" and "time limits imposed to complete

18 certain tasks" prohibited employees from taking "uninterrupted, duty-free rest periods." (*Id.*)

19 Garza also alleges WinCo "did not authorize or permit . . . any rest periods" to which Garza and

20 class members were entitled. (Doc. 2 at 35.)

21       These allegations offer little more than conclusory statements regarding employees'

22 workload and recite the elements of the cause of action under California Labor Code §§ 226.7 and

23 516. As WinCo correctly points out, reliance on a heavy workload does not satisfy pleading

24 requirements. *Ovieda v. Sodexo Operations, LLC*, No. CV 12–1750–GHK (SSx), 2012 WL

25 1627237, \*3 (C.D. Cal. May 7, 2012). The complaint is devoid of factual allegations that would

26 support its claim, such as "details concerning the plaintiff's shift schedules, what specific policies

27 and practices were used to manage her, and whether such policies and practices were company-

28 wide." *See id.* Garza's allegations that WinCo did not authorize employees to take "any rest

periods" could arguably be interpreted as a company-wide practice, but Garza does not explain what employment policy led to this denial. Garza's "bare-bones" assertion that the "operating requirements of the job" and "time limits imposed to complete certain task" does not provide "sufficient factual enhancement to allow . . . a reasonable inference" of liability." *Ovieda*, 2012 WL 1627237, at *3; *compare Castanon*, 2021 WL 4480846, at *1-3 (allegations that employees "were systematically not authorized to take on net ten-minute paid, rest period every four hours" and were "not provided a full, uninterrupted meal break" did not sufficiently plead rest period violations under California Labor laws), *with Barajas v. Tharaldson Hosp. Staffing, LLC*, No. 519CV01275ABKKX, 2019 WL 8013414, at *7 (C.D. Cal. Oct. 22, 2019) (pleadings sufficient where the plaintiff alleged defendants "systematically understaffed the front desk of their hotels by maintaining a single-attendant staffing model, which required Plaintiffs to remain available and on-duty during meal and rest periods").

>        3.        Fourth-Seventh Causes of Action

WinCo argues that Garza's fourth, fifth, sixth, and seventh causes of action should also be dismissed because the complaint relies entirely on allegations set forth in the prior claims for unpaid overtime, minimum wage, and rest period violations. (Doc. 7-1 at 20-22.) Garza does not explicitly dispute that all factual allegations to support the fourth and fifth causes of action— related to failure to provide accurate wage statements and waiting time penalty violations—are derivative of the other claims, but rather reasserts arguments made as to the sufficiency of the underlying claims. (Doc. 9 at 16-19.) Garza admits his claims under California's Unfair Competition Law and for civil penalties under PAGA rely on allegations made for the prior claims. (*Id.* at 19.)

The Court finds that Garza's fourth through seventh causes of action are all derivative from the overtime, minimum wage, and rest period violations, and similarly fail for the reasons stated above. For this reason, dismissal is appropriate for each of the derivative claims. *See, e.g., Castanon*, 2021 WL 4480846, at *4 (dismissing claims for accurate wage statements, waiting time penalties, and unfair competition as derivative of the deficiently plead underlying claims); *see also Archuleta*, 2019 WL 1751830, at **3-4 (dismissing claims for accurate wage statements

and waiting time penalties as derivative of dismissed claims for minimum wage and rest period

violations); *Ovieda*, 2012 WL 1627237, at **3-4 (dismissing claims under PAGA for relying on

same deficient allegations as the underlying minimum wage and rest period violation claims).

**C.     Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be

freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*,

203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). When

dismissing a complaint for failure to state a claim, "a district court should grant leave to amend

even if no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks

omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment

would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party

acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Garza requests that if the Court finds the pleadings deficient, leave to amend be granted,

because any "alleged factual deficiencies in the Complaint can be simply cured via amendment."

(Doc. 9 at 20.) Garza contends it can supplement the factual deficiencies with information from

his employment records. (*Id.*) WinCo only opposes Garza's request with respect to the overtime

claim, contending amendment is futile because Section 514 bars the claim and the LMRA

preempts it. (*See* Doc. 12 at 3.) However, as explained above, Garza may plead sufficient facts to

show compliance with the grievance procedures under the CBA. Further, it does not appear that

allowing amendment would cause undue delay at this juncture, and there is no evidence Garza

acted in bad faith. Thus, the request for leave to amend is granted.

## V.     ORDER

For the reasons set forth above, the Court **ORDERS:**

1.     The motion to remand (Doc. 10) is **DENIED**.

2.     Defendant's motion to dismiss (Doc. 7) is **GRANTED.**

3.     The complaint is **DISMISSED** with leave to amend; and

4.    Plaintiff **SHALL** file a First Amended Complaint within thirty days of the date of service of this order.

**Plaintiff is advised that failure to timely file an amended complaint may result in dismissal of the action for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated:  **March 28, 2022**

UNITED STATES DISTRICT JUDGE